1

**CAMPANA, VIEH & LOEB, PLC**

2

ATTORNEYS AT LAW
4422 NORTH CIVIC CENTER PLAZA

SUITE 101

3

SCOTTSDALE, ARIZONA 85251-3523
(480) 707-5000

4

dloeb@scottslaw.com
DONALD O.  LOEB, #001959

5

Attorney for Defendant

6

7

### IN THE UNITED STATES DISTRICT COURT

8

### FOR THE DISTRICT OF ARIZONA

9

10

HSBC Bank USA, N.A. as Trustee for
Deutsche Alt-A Securities Mortgage Loan

No.  CV10-1897-PHX-ECV

11

Trust, Series 2007-AR3 Mortgage Pass-
Through Certificates,

12

13

                                    Plaintiff,

**ANSWER AND COUNTERCLAIM**

14

          v.

15

Deborah J.  Wynn,

16

                                    Defendant.

17

18

19

          Comes now the Defendant Deborah Wynn, and for her Answer to the Plaintiff's Complaint

20

admits denies and alleges as follows:

21

### PARTIES, JURISDICTION AND VENUE

22

          1. Responding to the allegations contained in paragraph 1 of Plaintiff's Complaint, Defendant

23

Deborah Wynn admits that HSBC Bank USA, N.A. ("HSBC") is a national banking association with

24

its principal place of business in New York, and that it purports to bring this action in its capacity as

25

the Trustee for the Investors in a Mortgage Backed Security ("MBS") or Collateralized Debt

26

Obligation ("CDO") entitled "the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-AR3

Mortgage Pass-Through Certificates" [although Defendant was advised by letter to her dated December 2, 2009 from IndyMac Mortgage Services, a division of One West Bank, FSB , that IndyMac Mortgage Services was currently servicing her loan on behalf of securitization trust DBALT 2007-AR3 4/30/07 , Wells Fargo Bank, N.A., as Trustee/Master Servicer] (a) that HSBC and the Investors it purports to represent have never been in privity of contract with the Defendant mortgage loan Borrower/Trustor Deborah Wynn; (b) that the Plaintiff HSBC, the "Trustee" under the above-referenced Mortgage Backed Security, has, throughout the non-judicial foreclosure process, from start to finish, purposely hidden and concealed its identity along with the identity of the Mortgage Backed Security it represents and its pervasive role in the non-judicial foreclosure process from the Defendant Borrower/Trustor Deborah Wynn, including but not limited to the fact that, at one time, HSBC apparently purported to purchase the Defendant's loan from the loan originator in a transaction that was never placed of record in the Office of the Maricopa County Recorder but instead was instead "registered" electronically in the MERS system accessible only to dues-paying members of that system including banks, mortgage brokers, commercial lenders, hedge funds, private equity firms, title insurance companies, loan servicers, credit enhancement insurers, attorney representing lenders including attorneys working for or managing so called "foreclosure mills" including Lender Processing Services ("LPS") that are currently under investigation for potential criminal activity by the Attorneys General of at least seven states; (c) that the MERS electronic registration system has never be authorized for use in Arizona by the Arizona State Legislature as it has been in the State of Minnesota; (d) that the Plaintiff HSBC has hidden and concealed from the Defendant mortgage loan Borrower/Trustor throughout the non-judicial foreclosure process its role in that process, among other things, to disguise the fact that, through one or more unrecorded assignments of the Deed of Trust and purported transfers of the original lender's interest in the Promissory Note without a proper endorsement on the reverse side of the Promissory Note, HSBC has through such assignments and transfers into an out of the above referenced Mortgage Backed Security, registered with the Securities & Exchange Commission, HSBC has created a bond/security interest in "personal property" (not real

2

1   property) thereby irrevocably "splitting" the Promissory Note signed by the Plaintiff Borrower from

2   the Deed of Trust also signed by the Plaintiff borrower making it thereafter impossible for anyone

3   including any purported successor lender, loan servicer or trustee of a mortgage backed security to

4   non-judicially foreclose the Deed of Trust or to enforce the instrument (Promissory Note) under the

5   authority contained in Carpenter v. Longan, 83 U.S. 16 Wall. 271 (1872), (e) that the Plaintiff HSBC

6   lacks "standing" to bring suit against the Defendant Deborah Wynn because HSBC and Investors in

7   the above-referenced Mortgage Backed Security it purports to represent are not named as the

8   mortgagee, beneficiary or lender in the above referenced Deed of Trust or in any purported assignment

9   of record in the Maricopa County Recorder's Office; (f) that HSBC and the Investors in the Mortgage

10  Backed Security it purports to represent are not the Real Parties in Interest with authority to bring suit

11  against the Defendant/Borrower under Rule 17(a) Federal Rules of Civil Procedure or with the right

12  to seek a judgment requiring the Defendant to release the lis pendens the Defendant previously

13  recorded in the Office of the Maricopa County Recorder against real property which HSBC does not

14  own and in which it has no security interest; (g) that HSBC and the Investors in the Mortgage Backed

15  Security it purports to represent are not the named as the "payees" in the Promissory Note signed by

16  the Defendant Borrower Deborah Wynn; (h) that no valid Assignment of the original lender's

17  beneficial interest in the Deed of Trust to HSBC has ever been recorded in the Office of the Maricopa

18  County Recorder but instead was apparently "registered" in the MERS system which system has been

19  authorized by the Minnesota Legislature for use in that state, but which has never been authorized by

20  the Arizona State Legislature to supplant the recording system which has been in effect in all counties

21  in the State of Arizona since Territorial Days; (i) that any purported Trustee's Sale of the subject

22  property that has previously taken place is null and void for the reason, among other things, that so-

23  called "robo-signers" retained by one or more "foreclosure mills" who have never reviewed the

24  documents they have signed, who have been given no guidelines regarding the criteria they are to

25  apply and the factors they should consider before signing documents including purported Assignments

26  of a lender's interest in a deed of trust or a substitution of trustee; Such robo-signers therefore lacked

3

1    any authority to assign the original lender or a purported successor lenders' interest in the Deed of

2    Trust and have failed to lawfully transfer the original lender's beneficial interest in the Deed of Trust

3    to any purported Assignee named therein; and (k) that the endorsement in blank placed upon the

4    reverse side of the original Promissory Note signed by the Plaintiff Borrower did not serve to lawfully

5    transfer the original lender's beneficial interest in that Promissory Note signed by the Plaintiff

6    Borrower to HSBC's seller or to anyone else; (l) the Plaintiff has not demonstrated that Defendant's

7    home mortgage loan ever formed a part of the Mortgage Backed Security at issue; and (m) since the

8    Plaintiff HSBC, the Trustee of the above referenced Mortgage Backed Security, has no mortgage lien

9    upon or valid interest in the real property in question, the Plaintiff is unaffected by the recording of

10   the above referenced Lis Pendens and therefore, for that reason alone, has no standing to bring the

11   present action.

12        2. Defendant admits the allegations contained in paragraph 2 of Plaintiff's Complaint.

13        3. Defendant is without sufficient knowledge or information with which to form a belief

14   regarding the truth of the allegations contained in paragraph 3 of Plaintiff's Complaint and therefore

15   denies said allegations.

16        4. Defendant is without sufficient knowledge or information with which to form a belief of the

17   truth of the allegations contained in paragraph 4 of Plaintiff's Complaint and therefore denies said

18   allegations.

19        5. Responding to the allegations contained in paragraph 5 of Plaintiff's Complaint, Defendant

20   admits that the property at issue is located in Arizona and that some of the events that gave rise to

21   Plaintiff's claims occurred in Maricopa County, however since the Plaintiff holds no valid interest in

22   the Property at issue, that interest cannot form the basis for a claim that venue is proper in Maricopa

23   County.

24                                    **NATURE OF THE COMPLAINT**

25        6. Responding to the allegations contained in paragraph 6 of Plaintiff's Complaint, Defendant

26   denies that the subject matter of Plaintiff's Complaint qualifies as a Special Action and in that

4

connection alleges affirmatively that the Plaintiff HSBC and the Investors in the above-referenced Mortgage Backed Security have never been the owners of the subject property, that the Investors lack the authority to market or to sell the subject property since the Investors in the Mortgage Backed Security has never acquired title to the subject property in any Deed or other document recorded in the Office of the Maricopa County Recorder for the reason that the chain-of-title to the Property has been irrevocably destroyed through the "registration" of one or more purported assignments of the original lender's interest in the Deed of Trust in the unauthorized MERS system, the content of which registrations have never been made available to the general public via recording of the information contained in such registrations in  the Office of the Maricopa County Recorder making it impossible for any title insurance company to issue a reliable or genuine Status of Title Report or Policy of Title Insurance covering the subject property, therefore the Investors in the above referenced Mortgage Backed Security were unaffected by the recording of the above referenced lis pendens by the Defendant.

7. Responding to the allegations contained in paragraph 7 of Plaintiff's Complaint, Defendant denies said allegations and in that connection alleges affirmatively that the allegations contained in Plaintiff's Complaint do not raise a Federal Question and that Quiet Title actions involving title to real property located in the State of Arizona actions do not involve issues of federal law and must therefore be brought in the Maricopa County Superior rather than cluttering up the calendars of Judges in the United States District Court for the District of Arizona; In that connection the Defendant further affirmatively alleges that since HSBC is not the owner or beneficial title holder of the Property, HSBC lacks standing to bring a Special Action to clear title to the real property in question, has no valid lien on that property and therefore has no standing to bring an action under Arizona's wrongful lien statute, A.R.S. §33-420.

8. Responding to the allegations contained in paragraph 8 of Plaintiff's Complaint Plaintiff denies said allegations and in that connection alleges affirmatively that Plaintiff is attempting to turn a state cause of action into a federal cause of action thereby cluttering up the calendar of the United

States District Court for the District of Arizona and that the Defendants claims for quiet title, declaratory judgment, slander of title and for damages under A.R.S. §33-420(a) and (c) all reference state law claims rather than claims arising under federal law and that this court lacks subject matter jurisdiction to hear such claims.

**GENERAL ALLEGATIONS**

9. Responding to the allegations contained in paragraph 3 of Plaintiff's Complaint, Defendant admits said allegations but in that connection alleges affirmatively (a) that the Plaintiff was induced to purchase the subject property and to execute the Deed of Trust, Promissory Note and other documents relating to the financing and purchase of the Property as a result of negligent misrepresentations, acts of concealment, non-disclosure and fraud on the part of officers, representatives and agents of TBI Mortgage Company and Toll Brothers AZ Construction, LLC, and the actions of lenders, banks and others creating the Mortgage Backed Security into which the Defendant's mortgage loan has apparently been placed; (b) That by signing the Deed of Trust in question, the Plaintiff never knowingly consented to allow her original lender or any purported successor lender to "register" the purported Assignment or subsequent purported Assignments of the Defendant Borrower's interest in the Deed of Trust into the Mortgages Electronic Registration System, a system about which she knew nothing since no explanation of the nature, operation or purpose of that system was ever given to her by her original lender, TBI Mortgage Company, nor was it ever explained to her that by signing the Deed of Trust purported Assignments of the original lender's interest in the Deed of Trust would not be recorded in the Office of the Maricopa County Recorder for all to see instead would be registered electronically in the MERS system; (c) that but for the concealment by the original lender from the Defendant Borrower of the nature and proposed use of the MERS system, the Defendant would never have executed the Deed of Trust or the Note or purchased the home in question; (d) That had the Defendant known that her original lender, TBI Mortgage Company, was asking her to consent to that lender's use of the MERS electronic registration system in lieu of using the recording system in place in all fourteen counties in the State

of Arizona since Territorial Days as substitute for the role played by the Maricopa County Recorders Office, a purported registration system accessible only to banks, mortgage bankers, hedge funds, private equity firms, mortgage brokers, loan servicers, trustees, credit enhancement insurers, title insurance companies, government housing agencies including Freddie Mac and Fannie Mae and others involved in the home mortgage lending industry which system is not accessible to home mortgage borrowers purchasing homes and obtaining mortgage loans on the homes they have purchased, Defendant would never have executed the Deed of Trust or the Promissory Note in question; (e) That she had any inkling that following her execution of the Deed of Trust and Promissory Note or even before she executed those documents, her home mortgage loan would be securitized and placed into a Mortgage Backed Security interests in which had already been or which would in the future be purchased by Investors, she would never have purchased the home in question; (f) That had she known that at no time prior to a purported Trustee's Sale of her Property initiated by a purported assignee of the original mortgagee lender's beneficial interest in the Deed of Trust would she ever be given the name, the address or the identify of the purported successor lender or the names of the Investors in a Mortgage Backed Security into which her loan had allegedly been placed, she would never have purchased the property; (g) That had the Defendant known that if she ever desired to negotiate with her lender in an effort to seek a modification of her home loan she would never be permitted to speak with an authorized representative of the Investors in the above referenced Mortgage Backed Security but instead would be required to contact and negotiate exclusively with a representative or agent of a Substitute Loan Servicer purportedly appointed by MERS, by her original lender, by a purported assignee of the beneficial interest in her home mortgage loan or appointed by someone else, she would never have executed the Deed of Trust or the Promissory Note in question or purchased the subject property; and (h) that had the Defendant known that the Appraisal Report she was given by TBI Mortgage Company purporting to reflect a bona fide effort on the part of the Appraisal Firm used by TBI Mortgage Company to estimate the market value of the home she was considering purchasing was negligently prepared, materially inaccurate, and contained

1   clearly non-comparable sales which unreasonably inflated the true current market value of her home,

2   she would never have executed the Deed of Trust or the Promissory Note or purchased the subject

3   Property.

4          10. Defendant admits the allegations contained in paragraph 10 of Plaintiff's Complaint.

5          11. Responding to the allegations contained in paragraph 11 of Plaintiff's Complaint,

6   Defendant admits that the Deed of Trust dated February 14, 2007 was recorded in the Official

7   Records of the Maricopa County Recorder but in that connection alleges affirmatively that MERS was

8   not the beneficiary and had no authority to act on behalf of either the original Lender TBI Mortgage

9   Company or to act on behalf of the Defendant mortgage loan borrower; That MERS cannot wear two

10  hats namely the hat of the purported "beneficiary" and the hat of an entity acting "solely as a nominee

11  for Lender and Lender's successors and assigns"; That MERS lacked the power to act either as the

12  "beneficiary" under the Deed of Trust or to act "solely as a nominee for Lender and Lender's

13  successors and assigns", was never the "holder" of the original Promissory Note signed by the

14  Defendant borrower, was never the custodian of the original Note, was never in possession of the

15  original Promissory Note, never purported to endorse the reverse side of the original of the

16  Promissory Note to a third party, never executed an allonge purporting to assign the original lender's

17  interest in the Note to a third party, was never the servicer of the Defendant's mortgage loan, never

18  received or accepted any payments made by the Defendant mortgage loan borrower, never lawfully

19  Assigned its (MERS') purported interest in the Defendant's home mortgage loan and never acted as

20  the lawful agent for the original lender, for any purported successor lender, for the Plaintiff HSBC,

21  or for any of the Investors in the above referenced Mortgage Backed Security.

22         12. Responding to the allegations contained in paragraph 12 of Plaintiff's Complaint,

23  Defendant denies said allegations and in that connection alleges affirmatively that MERS could not

24  lawfully be designated as the "beneficiary" in the Deed of Trust, that MERS lacked authority to

25  purport to assign the original lender TBI Mortgage Company's beneficial interest in the Deed of Trust

26  at issue to anyone including to Indy Mac Federal Bank, FSB, that MERS lacked authority to purport

8

to supplant the recording system in place in each of the fourteen counties in the State of Arizona since Statehood, among other things because, unlike the State of Minnesota, the Arizona State Legislature has not authorized the use of the MERS electronic registration system to supplant the recording system in place in the State of Arizona since Territorial Days nor has the Arizona Legislature allowed MERS to destroy the recording system in the State of Arizona as it existed prior to the advent of the MERS electronic registration system in the mid-90's, the use of which system has created massive GAPS in the chains of title to millions of mortgaged real properties located in all fifty states of the Union and the use of which has made it virtually impossible for title insurance companies throughout the United States to issue valid Status of Title Reports or accurate Policies of Title Insurance to the purchasers and users of such reports; and that without a property endorsement by a person authorized by the true lender or successor lender, MERS could not lawfully transfer the original lender's beneficial interest in the original Promissory Note signed by the Defendant borrower to Indymac Federal Bank, FSB or transfer that interest to any other purported transferee; therefore, in light of the purported assignment by MERS of the original lender's beneficial interest in the Deed of Trust to IndyMac Federal Bank, FSB the Note and Deed of Trust have been "split" making it impossible for the original lender or its purported successor in interest to non-judicially foreclose the original lender's interest in the Deed of Trust or to enforce the Note.

13. Defendant denies the allegations contained in paragraph 13 of Plaintiff's Complaint and in that connection alleges affirmatively that since the original lender TBI Mortgage, Inc. lacked the power or authority to register in the MERS system a purported assignment of that original lender's beneficial interest in the Deed of Trust from TBI Mortgage, Inc. to MERS without also recording that Assignment in the Office of the Maricopa County Recorder, MERS in turn lacked the power to register in the MERS system a purported subsequent Assignment of the original lender's beneficial interest in the Deed of Trust to the Plaintiff HSBC Bank and the original lender's beneficial interest in the Deed of Trust was therefore never lawfully incorporated into the Mortgage Backed Security referenced above.

**THE TRUSTEE'S SALE OF THE PROPERTY**

14. Defendant is without sufficient knowledge or information with which to form a belief as to the truth of the allegations contained in paragraph 14 of Plaintiff's Complaint, among other things, (a) because when the Defendant made payments on her mortgage to an entity she understood was the Loan Servicer, she did not know how those payments were applied, (b) whether those payments were ever sent to or received by HSBC and/or forwarded on to the Investors in the Mortgage Backed Security of which this mortgage loan forms a part, and if so in what amounts, (c) what portion of those payments made by the Loan Servicer to HSBC and to the Investors in the Mortgage Backed Security were kept by the Loan Servicer as fees, fines, penalties, assessments, collection costs, attorney's fees, foreclosure fees or similar charges, (d) what portion of those payments were kept, whether lawfully or unlawfully, by the original Loan Servicer or by any successor Loan Servicer as commissions, kickbacks or other claimed entitlements due the Loan Servicer, (e) Defendant does not know whether, via an assignment registered in the MERS system, her mortgage loan has been assigned to a purported successor lender; (f) whether via the purchase of a Credit Default Swap ("CDS") or other Credit Enhancement Device, Defendant's home mortgage loan has been purchased from her original lender by some other entity, purchased by a purported assignee of the original lender's beneficial interest in the loan, purchased by Freddie Mac, by Fannie Mae or by Ginnie Mae, and, if so, when her loan was purchased, whether the lender or the Investors have been paid all or part of the proceeds under a government guaranteed insurance policy issued by Freddie Mac, by Fannie Mae, or by Ginnie Mae in exchange for Freddie, Fanny or Ginnie's purchase of the loan, and, if so, what amount one of those three entities paid the lender, the Trust, the Investors, or a third party in exchange for the loan, therefore Defendant denies said allegations.

15. Responding to the allegations contained in paragraph 15 of Plaintiff's Complaint, Defendant admits that a purported Trustee's Sale of the subject property was held on April 21, 2010 but in that connection denies that the Trustee's Sale was valid or that the Trustee's Deed Upon Sale issued following that unlawful Trustee's Sale transferred ownership of the Property to the purchaser

10

at that sale for all of the following reasons: (a) the purported Substitute Trustee/agent MTC Financial, dba Trustee Corps purported to conduct the Trustee's Sale on behalf of an undisclosed principal had no authority from the beneficiary named in the Deed of Trust or from any purported successor beneficiary under the Deed of Trust to conduct the Trustee's Sale, (b) the purported Substitute Trustee/agent MTC Financial dba Trustee Corp's undisclosed principal directing it to conduct the Trustee's Sale at the time of the purported sale was not the holder of the original of the Promissory Note with the power to enforce that instrument, was not the custodian of the original of the Promissory Note with the power to enforce the Note, was not the transferee by proper endorsement of the original lender's beneficial interest in the Promissory Note, (c) no Lost Note Affidavit was ever produced signed by a person with personal knowledge of the facts and circumstances surrounding the alleged loss of the original Note as required under A.R.S. §33-409(A) and (B) which might otherwise have authorized a principal entitled to enforce the Note to commission the Substitute Trustee to record the Notice of Trustee's Sale, to conduct the Trustee's Sale and thereafter to execute a valid Trustee's Deed Upon Sale to the Purchaser at that sale, (d) the purported "conclusive presumption" of compliance with title 33 chap. 6.1 contained in ARS §33-811(B) is unconstitutional as violative of the Distribution (Separation) of Powers Doctrine set forth in Art. 3 and Art. 4, Pt. 2, Section 19(5) of the Constitution of the State of Arizona as an unlawful encroachment upon the rule-making power of the Arizona Supreme Court which is the only branch of government authorized to promulgate, change, alter, modify or amend the Arizona Rules of Evidence and because the Arizona State Legislature lacks power or authority to create the purported conclusive presumption that a Trustees' Deed Upon Sale issued by any purported trustee, regardless of who or what principal appointed the trustee to sell the property, has absolute authority to sell the property to a purchaser at a trustee's sale conducted by such a trustee, giving ownership status to the purchaser at the sale; (e) That Arizona deed of trust statutes contained in title 33 chap. 6.1 are archaic and were, for the most part, drafted before the MERS electronic registration system was put in place in all fifty states and before home mortgage lenders began using the MERS system on millions and millions of occasions to electronically

purport to transfer, in nano-seconds, assignments of interests in mortgage loans by persons involved in the home loan mortgage lending industry from one person or entity to another while circumventing the recording system that has been in place in Arizona since Territorial Days and using the MERS system to purport to transfer lenders' interests in deeds of trust from one person or entity to another without recording such assignments or transfers of lenders' interests in Deeds of Trust in the office of the local county recorder where the property is located; (f) That unlike the State of Minnesota, where the use of MERS has been specifically authorized by the Minnesota State Legislature, title 33, chap. 6.1, the Deed of Trust Statutes, contains no provision authorizing the use of the MERS system to "register" purported assignments of an original lender's beneficial interest in a deed of trust to a purported assignee without recording such an assignment in the office of the county recorder where the land is located making the use of that system unlawful and unauthorized; (g) that use of the MERS system to register transfers of mortgage lenders' beneficial interests in home mortgage loans has created chaos in efforts by title companies and others to abstract title in Arizona, has created situations where there are massive GAPS in the recorded chain of title to mortgaged property as lender's beneficial interests in the Deeds of Trust are often not recorded in the offices of the county recorders in the Arizona counties where the land is located making it virtually impossible for title insurance companies to ever issue reasonably accurate Title Insurance Policies or Status of Title Reports since the names of mesne conveyancers, purported assignees of a lender's beneficial interest in a deed of trust and the names of Trustees of Mortgage Backed Securities are often from the records and data used by title companies in generating such insurance policies and status of title reports making the generation of accurate and reliable policies of title insurance and status of title reports to the purchasers of property following Trustee's Sales of property purportedly incorporated into Mortgage Backed Securities virtually impossible.

16. Defendant denies the allegations contained in paragraph 16 of Plaintiff's Complaint.

## DEFENDANT'S LAWSUITS

17. Defendant admits the allegations contained in paragraph 17 of Plaintiff's Complaint.

12

18. Defendant admits the allegations contained in paragraph 18 of Plaintiff's Complaint.

**THE LIS PENDENS**

19. Defendant admits the allegations contained in paragraph 19 of Plaintiff's Complaint.

20. Defendant admits the allegations contained in paragraph 20 of Plaintiff's Complaint.

21. Defendant denies the allegations contained in paragraph 21 of Plaintiff's Complaint and alleges affirmatively that the Plaintiff has concealed from the Defendant home mortgage loan borrower the fact that her home mortgage loan has been securitized and placed in a Mortgage Backed Security as a result of the "registration" of a purported unrecorded assignment "registered" in the MERS system to which the Plaintiff knows the Defendant lacks access and knows that there is and was a substantial GAP in the chain of title to the subject property during the time when Defendant's loan was unlawfully transferred into and out of the above referenced Mortgage Backed Security.

22. Defendant denies the allegations contained in paragraph 22 of Plaintiff's Complaint and in that connection alleges affirmatively that the Substitute Trustee/agent representing the purported successor lender/seller at the Trustee's Sale at which HSBC claims to have purchased the subject property was outside the record chain of title to the subject property and lacked authority to record a Notice Trustees' Sale, lacked authority to conduct the Trustee's Sale and lacked authority thereafter to issue a Trustee's Deed Upon Sale to HSBC, the purchaser at that Trustee's Sale.

23. Responding to the allegations contained in paragraph 23 of Plaintiff's Complaint, Defendant has now filed her First Amended Complaint in Cause No. CV09-1587-PHX-JAT raising new and additional claims for relief in that action and omitting some claims previously asserted in that action.

24. Defendant denies the allegations contained in paragraph 24 of Plaintiff's Complaint and in that connection alleges affirmatively that for many of the reasons why Bank of America, Ally/GMAC, JP Morgan Chase Bank, Wells Fargo and other home mortgage lenders have stopped foreclosures either in all fifty states or in many of those states, including the unlawful use by MERS as a clearing house for mortgage loans and the use by some Members of the Mortgage Bankers

13

Association and others throughout the United States of so-called "robo-signers" who sign thousands of documents, many outside the presence of a notary, purporting to represent banks, mortgage lenders, financial institutions, loan servicers and other entities involved in the home mortgage lending industry by whom such robo-signers have never been employed and for whom they have never worked.

25. Responding to the allegations contained in paragraph 25 of Plaintiff's Complaint, Defendant admits that she has not taken steps to remove the Lis Pendens for the reason that the Defendant HSBC and others involved in the present home mortgage loan series of transactions have unlawfully taken her home away from her to her extreme detriment causing her untold financial and emotional damage and hardship.

## FIRST CAUSE OF ACTION
### (Special Action to Clear Title)

26. Defendant incorporates by reference each and every paragraph of her responses to General Allegations contained in Plaintiff's Complaint as if set forth in haec verba herein.

27. Defendant denies the allegations contained in paragraph 27 of Plaintiff's Complaint and alleges affirmatively that Plaintiff is not the owner of the Property with standing to demand the removal of the Lis Pendens recorded by the Defendant mortgage loan Borrower/Trustor and is not the Real Party in Interest under Rule 17(a) Federal Rules of Civil Procedure.

28. Defendant denies the allegations contained in paragraph 28 of Plaintiff's Complaint.

29. Defendant denies the allegations contained in paragraph 29 of Plaintiff's Complaint.

30. Defendant denies the allegations contained in paragraph 30 of Plaintiff's Complaint.

## SECOND CAUSE OF ACTION
### (Wrongful Encumbrance Under A.R.S. §§33-420(A) and (C).

31. Defendant incorporates by reference each and every admission denial and affirmative defense to the Plaintiff's General Allegations and to Plaintiff's First Cause of Action as if set forth fully herein.

14

32. Defendant denies the allegations contained in paragraph 32 of Plaintiff's Complaint and in that connection alleges affirmatively that the Plaintiff is currently in possession of the subject property following the filing by the Plaintiff of its Complaint in Forcible Detainer.

33. Defendant denies the allegations contained in paragraph 33 of Plaintiff's Complaint.

34. Defendant denies the allegations contained in paragraph 34 of Plaintiff's Complaint and in that connection alleges affirmatively that the purported seller claiming to have appointed a Substitute Trustee to sell the Property from whom the Plaintiff HSBC claims to have purchased the Defendant's Property at a Trustee's Sale via a Trustee's Deed Upon Sale was not the owner of record of the subject property, that the non-judicial foreclosure process pursuant to which the Substitute Trustee's purported principal claims to have establish an ownership interest in the Property along with the right to sell the Property at public auction to the Plaintiff was fatally flawed, illegal and was the result of the use of a "foreclosure mill" to orchestrate the purported non-judicial foreclosure sale, that documents used in connection with the purported non-judicial foreclosure of the Defendant borrower's Property were fraudulently generated and signed by one or more so called "robo-signers" who lacked authority from a principal with authority to substitute a new Trustee for the original trustee, who lacked authority from a principal with authority to send out the Notice of Breach or Non-Performance, who lacked authority from a principal with authority to record the Notice of Trustee's Sale, who lacked authority from a principal with authority to commission the purported substitute trustee to conduct the Trustee's Sale at which the Plaintiff purports to have purchased the Property and who lacked authority from a principal with authority to commission the purported Substitute Trustee to issue the Trustee's Deed Upon Sale.

35. Defendant denies the allegations contained in paragraph 35 of Plaintiff's Complaint and in that connection alleges affirmatively that the entities conducting the purported Non-Judicial Trustee's Sale at which the Plaintiff claims to have purchased the property via a Trustee's Deed Upon Sale did not represent the owner of record according to the records on file in the Office of the Maricopa County Recorder but instead the Plaintiff HSBC purports to have purchased the Property

15

via a false and fraudulent purported assignment from MERS to the Trustee of the above referenced Mortgage Backed Security which purported assignment was never recorded in the Office of the Maricopa County Recorder.

36. Defendant denies the allegations contained in paragraph 36 of Plaintiff's Complaint.

## THIRD CAUSE OF ACTION
### (Quiet Title)

37. Defendant incorporates by reference herein each and every admission, denial and affirmative defense set forth in her Answer to the General Allegations, to the First and Second causes of action.

38. Defendant denies the allegations contained in paragraph 37 of Plaintiff's Complaint.

39. Defendant denies the allegations contained in paragraph 38 of Plaintiff's Complaint.

40. Defendant denies the allegations contained in paragraph 39 of Plaintiff's Complaint.

41. Defendant denies the allegations contained in paragraph 40 of Plaintiff's Complaint

42. Defendant denies the allegations contained in paragraph 42 of Plaintiff's Complaint.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

43. Defendant incorporates by reference each and every admission, denial and affirmative defense set forth in Defendant's Answer to the General Allegations and in Counts One, Two and Three of Plaintiff's Complaint.

44. Defendant denies the allegations contained in paragraph 44 of Plaintiff's Complaint.

45. Defendant denies the allegations contained in paragraph 45 of Plaintiff's Complaint.

As and for Defendant's Affirmative Defenses to the Plaintiff's Complaint, Defendant alleges as follows to the extent that such defenses have not been set forth above:

46. That once Plaintiff's home mortgage loan had been securitized, bundled together and placed in a Mortgage Backed Security, the loan became "personal property" in the form of Certificates purchased by Investors buying into what they hoped would be a stream of income coming from payments made by the Defendant borrower, Plaintiff's loan could no longer be non-judicially

16

foreclosed since her loan had been converted from an interest in real property represented by the Deed of Trust securing the Promissory Note into a Mortgage Backed Security in which Investors purchased certificates representing personal property, therefore the Investors were not the beneficiaries under the Deed of Trust, were not the holders of the Promissory Note, and lacked standing to attempt to resurrect the Deed of Trust or the Loan, to reconvert the loan from personal property to real property, or to appoint a purported Substitute Trustee to non-judicially foreclose the Deed of Trust or to enforce the Promissory Note neither of which were ever lawfully assigned or transferred to HSBC.

47. That the Plaintiff HSBC is not the real party in interest under Rule 17 Fed. R. Civ. Proc.

48. That documents in this case were prepared, including but not limited to a Substitution of Trustee and an Assignment of Deed of Trust by Lender Processing Services or by another "foreclosure mill" that employed or retained one or more "robo-signers" who lacked authority from the true beneficiary under the Deed of Trust to execute such documents and who did not sign such documents in the presence of a Notary Public in the State of Arizona which was a precondition to the recording of any purported Substitution of Trustee, to the recording of any purported Notice of Trustee's Sale or to the recording of any Trustee's Deed Upon Sale.

WHEREFORE Defendant prays for judgment as follows:

a. For a Judgment setting aside the purported non-judicial foreclosure sale of the Defendant's property;

b. For damages for wrongful foreclosure in an amount to be proven at trial;

c. For Defendant's costs of suit incurred herein;

d. For a trial by jury; and

e. For such other and further relief as the Court deems just and proper in the premises.

WHEREFORE Plaintiff prays for Judgment granting the following relief:

a. For a Judgment in favor of the Defendant denying all relief requested in Plaintiff's Complaint and dismissing Plaintiff's Complaint with prejudice;

b. For a Judgment declaring that the recording of the Lis Pendens by the Plaintiff was lawful

and proper and not wrongful, and awarding the Defendant her reasonable attorney's fees incurred herein pursuant to A.R.S. §12-341.01, along with her costs of suit;

c. For a judgment declaring that the Plaintiff HSBC lacks standing to file the present action since it did not acquire an ownership interest in the subject property when it purported to purchase a Trustee's Deed Upon Sale from a person or entity whose principal that had no recorded ownership interest in the Property, because one or more purported assignments of the original lender's interest in the Deed of Trust were registered in the MERS electronic registration system rather than recorded in the Office of the Maricopa County Recorder which purported assignments are null and void and of no force or effect, and because the Promissory Note signed by the Defendant borrower was never endorsed or to any lawful transferee of the Note granting to that person or entity the power or authority to commission a purported Substitute Trustee to sell the Property at a Trustee's Sale or to issue a Trustee's Deed Upon Sale following that sale to HSBC;

d. For an order declaring that HSBC has no valid interest in the subject Property;

e. For an order declaring that the Plaintiff HSBC is not the prevailing party in the present lawsuit and is therefore is not entitled to any statutory or compensatory damages nor to an award of its attorney's fees;

f. For an order declaring that Plaintiff is not entitled to any costs of the action; and

g. For such other and further relief as the court deems just and proper in the premises.

## COUNTERCLAIM

### QUIET TITLE
(HSBC as Trustee)

Comes now the Defendant/Counterclaimant, Deborah Wynn, and for her Counterclaim against the Plaintiff/Counterdefendant HSBC, alleges as follows:

1. Defendant/Counterclaimant is the lawful owner of the subject property as the purported non-judicial foreclosure of the Deed of Trust represented by the First Mortgage on her Property was initiated by an entity which had no interest of record in the Property, the purported Substitute Trustee

serving the Notice of Breach or Non-Performance, recording the Notice of Trustee's Sale, conducting that Trustee's Sale and thereafter purporting to issue a Trustee's Deed Upon Sale to HSBC was not authorized to do so by the holder of the Promissory Note signed by the Plaintiff borrower, by an entity that was the assignee of record of the original lender's beneficial interest in the Deed of Trust, by an entity purporting to be the lawful assignee of the original lender's beneficial interest in the Deed of Trust through a purported assignment that was never recorded in the Office of the Maricopa County Recorder but which purported assignment was instead "registered" in the MERS electronic registration system which system is not recognized in the State of Arizona as an entity with the right to supplant the recording system in place in Arizona since Territorial Days as the authorized repository for assignments of deeds of trust, substitutions of trustees, and other documents relating to purported non-judicial trustee's sales of Property in Arizona and said Trustee's Deed Upon Sale conveyed no valid interest in the Property to that assignee and that purported assignee lacked "standing" to non-judicially foreclose the Deed of Trust or to enforce the Note and was not the Real Party In Interest under Rule 17 Fed. R. Civ. Proc.

2. That the premises in question are located at 22502 North 37th Run, Phoenix, Arizona.

3. That once the Defendant's home mortgage loan was securitized and placed with other mortgage loans in a Mortgage Backed Security, the Deed of Trust and Promissory Note were "split" thereafter precluding anyone, including the Trustee or the Investors in the Mortgage Backed security from non-judicially foreclosing the loan, and from assigning the Deed of Trust or transferring the Promissory Note to a Substitute Trustee in order non-judicially foreclose the Deed of Trust or enforce the Promissory Note.

4. Defendant/Counterclaimant is credibly informed and believes that the Plaintiff/Counter-defendant HSBC makes some claim adverse to Defendant/Counterclaimant.

WHEREFORE Defendant/Counterclaimant prays for Judgment as follows:

a. For establishment of Defendant/ Counterclaimant's estate and that Plaintiff/Counterdefendant be barred and forever estopped from having or claiming any right or title

19

to the premises adverse to the Defendant/ Counterclaimant;   b. For Defendant/Counterclaimant's costs

of suit;

     c. For Defendant/Counterclaimant's reasonable attorney's fees incurred herein pursuant to

A.R.S. Section 12-341.01;

     d. And for such other and further relief as the court may deem just and proper in the premises.

     **DATED** this 19th day of October, 2010.

**CAMPANA, VIEH & LOEB, PLC**

By /s/ Donald O. Loeb                
     DONALD O.  LOEB
     4422 N. Civic Center Plaza, Suite 101
     Scottsdale, Arizona 85251
     Attorney for Plaintiff

ORIGINAL of the foregoing e-filed this 19th day of
October, 2010, with:

Clerk of the United States District Court
401 West Washington, Phoenix, Arizona 85003

COPY of the foregoing e-filed this 19th day of
October, 2010, to:

The Honorable Edward C.  Voss
United States District Court Magistrate Judge

COPY of the foregoing e-filed/mailed
this 19th day of October, 2010, to:

John Maston O'Neal
Scott S.  Simonson
Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 86004
scott.simonson@quarles.com ; john.oneal@quarles.com

/s/ Donald Loeb